Dennis F. Dunne
Wilbur F. Foster, Jr.
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

David S. Cohen
Adrian C. Azer
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 835-7500

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                                    :

In re:                                      :

                                       :

LEHMAN BROTHERS HOLDINGS INC., et al.,  :

                                       :

                   Debtors.           :

                                       :

-------------------------------------------------------------- x

SWEDBANK AB (PUBL),                  :

                                       :

                   Appellant,     :

                                       :     1:10-cv-04532 (NRB)

               v.                     :

                                       :

LEHMAN BROTHERS HOLDINGS, INC., et al.,  :
AND OFFICIAL COMMITTEE OF UNSECURED  :
CREDITORS OF LEHMAN BROTHERS         :
HOLDINGS INC., et al.                 :

                                   Appellees.:

-------------------------------------------------------------- x

**APPELLEE THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
LEHMAN BROTHERS HOLDINGS INC.'S BRIEF ON APPEAL**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 3

I.   SWEDBANK DOES NOT HAVE A "CONTRACTUAL RIGHT" UNDER
     SECTIONS 560 AND 561 TO EFFECT THE SWEDBANK SETOFF ........................... 3

     A.   By Its Plain Terms, the Setoff Provision Does Not Apply to the Swedbank
          Setoff ................................................................................................ 3

     B.   The Swedbank Setoff Is Unenforceable Under Applicable Nonbankruptcy
          Law .................................................................................................... 4

          1.   A Setoff Must Be Enforceable Under Applicable Nonbankruptcy
               Law To Qualify as a "Contractual Right" Under Sections 560 and
               561 ............................................................................................. 4

          2.   The Swedbank Setoff Is Unenforceable Under New York Law ............... 6

               a.   New York Law Permits Obligations To Be Set Off Only if
                    They Are Mutual, Meaning That They Are Between the
                    Same Parties Acting in the Same Capacity ................................ 6

               b.   The Swedbank Setoff Does Not Involve Obligations
                    Between the Same Parties .................................................... 8

               c.   The Swedbank Setoff Does Not Involve Obligations
                    Between Parties Acting in the Same Capacity ............................ 9

               d.   The Swedbank Setoff Violates the Prohibition Under New
                    York Law on Creditors Setting Off Preinsolvency
                    Obligations Against Postinsolvency Obligations ........................ 12

               e.   Section 151 of the Debtor and Creditor Law Does Not
                    Authorize the Swedbank Setoff ............................................ 19

          3.   The Swedbank Setoff Is Unenforceable Under English Law .................. 21

               a.   The English Insolvency Rules 1986 and FCA Regulations
                    Would Preclude the Swedbank Setoff ...................................... 21

               b.   Principles of Fairness at English Common Law Would
                    Similarly Preclude the Swedbank Setoff .................................. 23

II.  SECTIONS 560 AND 561 DO NOT OVERRIDE SECTION 553 ................................ 25

CONCLUSION .................................................................................................... 27

## TABLE OF AUTHORITIES

### CASES

Beecher v. Peter A. Vogt Mfg. Co.,
    227 N.Y. 468, 125 N.E. 831 (N.Y. 1920) ..............................................................6, 7

Behr v. Menendez,
    28 N.Y.S. 525 (N.Y. City  Ct. 1894) ........................................................................15

Bradley v. Angel,
    3 N.Y. 475 (1850) ....................................................................................................19

British Eagle Int'l Airlines Ltd. v. Compagnie Nationale Air France,
    [1975] 2 All ER 390......................................................................................23, 24

Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.),
    318 B.R. 276 (Bankr. S.D.N.Y. 2004) .....................................................................11

Burley v. Am. Gas & Oil Investors (In re Heafitz),
    85 B.R. 274 (Bankr. S.D.N.Y. 1988) .........................................................................8

Butler v. Turncliffe,
    140 So. 201 (Fla. 1932).............................................................................................16

Chipley State Bank v. McNeill,
    82 So. 292 (Fla. 1919)...............................................................................................16

Cock v. Cole,
    7 N.W. 419 (Iowa 1880) ..........................................................................................17

Cont'l & Commercial Trust & Sav. Bank v. Chi. Title & Trust Co.,
    229 U.S. 435 (1913).................................................................................................26

Dale v. Cooke,
    4 Johns Ch. 11 (N.Y. Ch. 1819).........................................................................7, 18

Derby v. Brandt,
    90 N.Y.S. 980 (App. Div. 1904) ..............................................................................15

Drake v. Pierce Butler Radiator Corp.,
    116 N.Y.S.2d 712 (Sup. Ct. 1952) .............................................................................7

Duncan v. Lyon,
    3 Johns Ch. 351 (N.Y. Ch. 1818)...............................................................................7

Fera v. Wickham,
    135 N.Y. 223 (1892) ................................................................................................20

Fistere v. Janapoli,
    241 A.D. 353, 272 N.Y.S. 332 (App. Div. 1934) ...............................................6, 19

Frank v. Mercantile Nat'l Bank,
    182 N.Y. 264 (1905) ................................................................................................20

Fry v. Evans,
    8 Wend. 530 (N.Y. 1832).........................................................................................18

Gen. Elec. Capital Bus. Asset Funding Corp. v. Hakakian,
    776 N.Y.S.2d 576 (App. Div. 2006)
    app. den'd, 4 N.Y.3d 703, 824 N.E.2d 50, (2005).....................................................7

Geron v. Schulman (In re Manshul Constr. Corp.),
    2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) ..........................................................5

Gerseta Corp. v. Equitable Trust Co.,
    241 N.Y. 418 (1926) ........................................................................................20

Gutchess v. Daniels,
    49 N.Y. 605 (1872) ...........................................................................................6

H & G.L. Coleman v. Winters Nat'l Bank & Trust Co.,
    192 N.E. 478 (Ohio Ct. App. 1934) ...............................................................16

Hansen v. Lorenzo,
    2009 WL 3681845 (N.Y. Dist. Ct. Oct. 30, 2009) .......................................7, 10

Harnett v. Nat'l Motorcycle Plan, Inc.,
    399 N.Y.S.2d 242 (App. Div. 1977) ..................................................................7

Howard v. Magazine & Book Co.,
    131 N.Y.S. 916 (App. Div. 1911) ....................................................................11

Hughes v. Frank M. Murphy, Inc.,
    6 N.Y.S.2d 833 (App. Term. 1938) ...................................................................7

Hughitt v. Hayes,
    136 N.Y. 163 (1892) .........................................................................................19

In re Cenargo Intern., PLC,
    294 B.R. 571 (Bankr. S.D.N.Y. 2003) .............................................................11

In re Chi. Architectural Iron Works v. McKey,
    93 Ill. App. 244 (1900) .....................................................................................13

In re Diesel Motors Co.,
    74 Misc. 2d 302, 345 N.Y.S.2d 870 (N.Y. Cty. Ct. 1973) ..........................6, 7, 8

In re Genuity, Inc.,
    323 B.R. 79 (Bankr. S.D.N.Y. 2005) ...............................................................8, 9

In re Hatch,
    155 N.Y. 401 (1898) ....................................................................................19, 20

In re Lehman Bros. Holdings Inc.,
    404 B.R. 752 (Bankr. S.D.N.Y. 2009) ...............................................................2

In re N.Y. Title & Mortgage Co.,
    260 A.D. 729, 23 N.Y.S.2d 303 (App. Div. 1940) .........................6, 8, 12, 13, 14

In re Nw. Airlines Corp.,
    349 B.R. 338 (S.D.N.Y. 2006)
    aff'd, 483 F.3d 160 (2d Cir. 2007) ...................................................................11

In re Perfection Technical Servs. Press, Inc.,
    256 N.Y.S.2d 166 (App. Div. 1965) ..................................................................7

In re Proffen's Estate,
    24 N.Y.S.2d 889 (Sur. Ct. 1940) ......................................................................7

In re R.H. Macy & Co. Inc.,
    157 B.R. 548 (S.D.N.Y. 1993) ..........................................................................9

In re United Healthcare System, Inc.,
    200 F.3d 170, 177 (3d Cir. 1999) ....................................................................11

In re WorldCom, Inc.,
    401 B.R. 637 (Bankr. S.D.N.Y. 2009) ...............................................................9

Jones v. Piening,
    55 N.W. 413 (Wis. 1893) .................................................................................18

Kemper Reinsurance Co. v. Cocoran (In re Midland Ins. Co.),
    79 N.Y.2d 253, 590 N.E.2d 1186 (N.Y. 1992) ............................................................7, 8, 11
Kress v. Cent. Trust Co.,
    246 A.D. 76, 283 N.Y.S. 467 (App. Div. 1935) ........................................................6
Lindsay v. Jackson,
    2 Paige Ch. 581 (N.Y. Ch. 1831) ................................................................19
Martin v. Kunzmuller,
    37 N.Y. 396 (1867) ................................................................19
Millennium Envtl., Inc. v. City of Long Beach,
    827 N.Y.S.2d 171 (App. Div. 2006) ................................................................7
Meyer v. Schulte,
    144 N.Y.S. 1028 (App. Div. 1913) ........................................................14, 15
Murray & Murray v. Toland & Meade,
    3 Johns. Ch. 569 (N.Y. Ch. 1818) ................................................................7
NLRB v. Bildisco & Bildisco,
    465 U.S. 513 (1984) ................................................................9
Otis v. Shantz,
    128 N.Y. 45, 27  N.E. 955 (1891) ........................................................15, 16
Patterson v. Patterson,
    59 N.Y. 574 (1875) ........................................................6, 17, 18
Pink v. Am. Sur. Co. of N.Y.,
    283 N.Y. 290, 28 N.E. 2d 842 (1940) ................................................................10
Pink v. Hartford Accident & Indem. Co. (In re Consol. Indem. & Ins. Co.),
    287 N.Y. 34, 38 N.E.2d 119 (1941) ........................................................6, 7, 10
Pink v. Title Guar. & Trust Co.,
    274 N.Y. 167, 8 N.E.2d 321 (1937) ................................................................7
Reab v. McAlister,
    8 Wend. 109 (N.Y. 1831) ........................................................6, 19
Richards v. La Tourette,
    119 N.Y. 54 (1890) ................................................................19
Root v. Taylor,
    20 Johns. 137 (N.Y. Sup. Ct. 1814) ................................................................18
Ross-Viking Merch. Corp. v. Am. Cyanamid Co. (In re Ross-Viking Merch. Corp.),
    151 B.R. 71 (Bankr. S.D.N.Y. 1993) ................................................................10
Sandler v. United Indus. Bank,
    256 N.Y.S.2d 442 (App. Div. 1965) ................................................................7
Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.),
    181 B.R. 741 (Bankr. S.D.N.Y. 1995) ........................................................9, 10
Shopmen's Local Union No. 455 v. Kevin Steel Prods., Inc.,
    519 F.2d 698 (2d Cir. 1975) ................................................................9
Shugrue v. Fischer (In re Ionosphere Clubs, Inc.),
    164 B.R. 839 (Bankr. S.D.N.Y. 1994) ................................................................5
Siegel v. State,
    28 N.Y.S.2d 958 (App. Div. 1941) ................................................................20
Singerly v. Fox,
    75 Pa. St. 112 (1874) ........................................................13, 14

Washburn Waterworks Co. v. City of Washburn,
    218 N.W. 825 (Wis. 1928).................................................................17
Westinghouse Credit Corp. v. D'Urso,
    278 F.3d 138 (2d Cir. 2002)...............................................................6
White v. Wasson,
    246 P. 445 (Okla. 1926)...................................................................17

### STATUTES

1927 N.Y. Laws 1741 .......................................................................19
11 U.S.C. § 101(13) ........................................................................11
11 U.S.C. § 553............................................................................ passim
11 U.S.C. § 553(a)(2)(A) ................................................................25, 26
11 U.S.C. §§ 560, 561 ................................................................... passim
11 U.S.C. § 1101(1) ........................................................................11
Fin. Coll. Arrangements ¶ 12(1) ........................................................22
Fin. Coll. Arrangements ¶ 12(2)(a) .....................................................22
Fin. Coll. Arrangements (No. 2) Regs. 2003 ........................................21

### OTHER AUTHORITIES

5 Collier on Bankruptcy ¶ 553.03[5][a][i] (2010) ..................................25
Annotation, Set-off as between claims by or against bankrupt or insolvent and claims by or
against trustee in bankruptcy, receiver, assignee, or trustee in insolvency, arising from
transaction after bankruptcy or insolvency, 71 A.L.R. 804 (1931), supplemented by 128 A.L.R.
809 (1940).................................................................................12
Garrard Glenn, The Law Governing Liquidation § 545 (1935)....................20
Insolvency Act, 1986 c. 45, Part IX, c. IV, § 323 (Eng.).............................2
Insolvency Rules 2.85-2.89...........................................................21, 22
Insolvency Rule 4.90 .......................................................................21
Lawrence A. Schei, Note, Bankruptcy:  Mutuality as a Requirement for Set-Off, 28 Cal. L. Rev.
606 (1940)...................................................................................11

The Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated chapter 11 debtors and debtors-in-possession (collectively, the "Debtors") hereby files this brief in support of the Appellee Brief of Lehman Brothers Holdings Inc., *et al.* (the "Debtors' Brief") to the Appellant Swedbank AB (publ.)'s ("Swedbank") Brief on Appeal (the "Swedbank Brief").  Specifically, the Committee joins in the arguments set forth by the Debtors, including, but not limited to, that any setoff rights that Swedbank may have under sections 560 and 561 of the Bankruptcy Code are limited by section 553 of the Bankruptcy Code.  The Committee also respectfully submits the following additional arguments in favor of affirming the Bankruptcy Court's Order and Memorandum Decision, dated May 5, 2010 (the "Order").

## PRELIMINARY STATEMENT

Swedbank argues that it may set off its prepetition claim against LBHI against its postpetition debt to LBHI (the "Swedbank Setoff") because, although section 553 of the Bankruptcy Code prohibits such a setoff, sections 560 and 561 of the Bankruptcy Code override or "trump" section 553 and authorize such a setoff when it is done through the exercise of a "contractual right" of setoff of the kind described in sections 560 and 561.  Swedbank contends that the Master Agreement between LBHI and Swedbank – in particular, the Setoff Provision[1] – gives Swedbank a "contractual right" of setoff under sections 560 and 561 that enables it to exercise the Swedbank setoff.[2]

---

[1] All terms not otherwise defined herein shall have the meanings given to them in the Debtors' Brief or the Swedbank Brief, as applicable.

[2] With the exception of the Master Agreement between Swedbank and LBCC, English law acts as the governing law under the Master Agreements.  Swedbank, however, concedes that English law and New York law are substantially similar with respect to setoff, including that both require mutuality.  (See Swedbank Brief at 11 n.3 ("the question of which law applied need not be reached since England has a 'venerable tradition that respects and preserves the right of setoff . . . of mutual creditors, mutual debtor or other mutual dealings . . . .).)  In addition, the Bankruptcy Court has previously recognized "that applicable

As a threshold matter, therefore, Swedbank's argument turns on (1) whether, by its terms, the Setoff Provision authorizes the Swedbank Setoff, and (2) if so, whether nonbankruptcy law permits the Swedbank Setoff.  Swedbank's argument fails on both counts.

First, the Setoff Provision does not authorize the Swedbank Setoff, because, by its terms, the Setoff Provision does not authorize Swedbank to exercise setoff rights with respect to obligations arising after the Early Termination Date.

Second, even if, by its terms, the Setoff Provision authorizes the Swedbank Setoff, nonbankruptcy law does not permit Swedbank to set off a prepetition claim against LBHI against a postpetition debt to LBHI.  As a general matter, such a setoff does not satisfy the mutuality requirement imposed under nonbankruptcy law, because it is neither (1) between the same parties nor (2) between parties acting in the same capacity.  Such a setoff also violates the prohibition under nonbankruptcy law on creditors setting off pre-insolvency-proceeding obligations (referred to here as "preinsolvency obligations") against post-insolvency-proceeding obligations (referred to here as "postinsolvency obligations").

In addition, Swedbank's statutory argument, that sections 560 and 561 of the Bankruptcy Code override or trump section 553, is inconsistent with both the plain language and the legislative history of those provisions.  In particular, if Swedbank's argument were accepted,

---

English law permits setoff under substantially the same circumstances as those allowed under the Bankruptcy Code."  In re Lehman Bros. Holdings Inc., 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009).

> England's Insolvency Act of 1986 continues a venerable tradition that respects and preserves the right of setoff by providing that "where before the commencement of the bankruptcy there have been mutual credits, mutual debts or other mutual dealings between the bankrupt and any creditor ..., [a]n account shall be taken of what is due from each party to the other in respect of the mutual dealings and the sums due from one party shall be set off against the sums due from the other." Insolvency Act, 1986 c. 45, Part IX, c. IV, § 323 (Eng.).

404 B.R. at 757.  Accordingly, this memorandum analyzes Swedbank's purported setoff rights pursuant to New York law.

a swap participant that owes money to a debtor – that is, a swap participant under a swap

agreement with a termination value that is "in the money" to the debtor – would be free, after the

commencement of a debtor's bankruptcy case, to purchase claims against the debtor and thereby

deprive the debtor's estate of the value of that in-the-money position.  This egregious result,

which is inconsistent with the plain language of the Bankruptcy Code and finds no support in any

legislative history or policy considerations, illustrates a fatal flaw in, and thus the invalidity of,

Swedbank's statutory argument.

**<u>ARGUMENT</u>**

**I.    <u>SWEDBANK DOES NOT HAVE A "CONTRACTUAL RIGHT" UNDER
SECTIONS 560 AND 561 TO EFFECT THE SWEDBANK SETOFF</u>**

**A.    <u>By Its Plain Terms, the Setoff Provision Does Not Apply to the
Swedbank Setoff</u>**

The Setoff Provision does not apply to the Swedbank Setoff because, by its plain

terms, the Setoff Provision permits Swedbank to assert setoff rights only against funds of LBHI

that were on deposit with Swedbank no later than the Early Termination Date.

<u>First</u>, the Setoff Provision states that, "upon the occurrence of an Event of Default

or an Additional Termination Event and the designation of an Early Termination Date pursuant

to Section 6 of the Agreement," Swedbank may set off obligations of LBHI "owed" to Swedbank

against obligations of Swedbank "owed" to LBHI.  Read together, these provisions indicate that

the Setoff Provision has a temporal limitation:  it permits Swedbank to set off only with respect

to obligations that are "owed" at the time of "the occurrence of" the specified events (meaning,

as a practical matter, no later than the Early Termination Date).

<u>Second</u>, the Setoff Provision states that Swedbank may set off with respect to

obligations "whether or not matured or contingent" at the time of "the occurrence of" the

3

specified events.  It does not state that Swedbank may set off with respect to obligations "whether or not in existence" at that time.

In sum, the Setoff Provision does not provide that Swedbank may set off at any time after the occurrence of the specified events with respect to obligations that are owed at that time or at any time thereafter, including obligations that do not come into existence until after the occurrence of those specified events.  If the parties had wanted "their carefully negotiated rights" (Swedbank Brief at 2), including "their duly negotiated contractual setoff rights" (id. at 3), to include setoff rights with respect to obligations that were not owed, or in existence, until after the Early Termination Date, they could have drafted the Setoff Provision to say that.  But they did not do so, and the Setoff Provision cannot reasonably be construed as if it they had.

**B.      The Swedbank Setoff Is Unenforceable Under Applicable Nonbankruptcy Law**

**1.      A Setoff Must Be Enforceable Under Applicable Nonbankruptcy Law To Qualify as a "Contractual Right" Under Sections 560 and 561**

In its brief, Swedbank contends that (1) the only limitations on its ability to exercise the Swedbank Setoff are those found in the contracts between Swedbank and the Debtors, and therefore (2) if Swedbank and the Debtors agreed to such a setoff, that agreement is enforceable under sections 560 and 561.  (See Swedbank Brief at 14 ("[O]n their face, the *only* limitations that the Safe Harbor Provisions imposed on the contractual rights of parties to Safe Harbor Transactions are those agreed to by the parties themselves." (emphasis in original)).)  The plain language of sections 560 and 561, however, refutes Swedbank's contention.

As discussed in Part I.A above, by its terms, the Setoff Provision does not authorize the Swedbank Setoff.  But even if it did, that alone would not suffice to make the Swedbank Setoff a setoff of the kind described in sections 560 and 561.  The reason is that it is

not enough for Swedbank to have merely a contractual "agreement" that authorizes the

Swedbank Setoff.  Instead, under sections 560 and 561, Swedbank must have a contractual

"right" to exercise the Swedbank Setoff – that is, Swedbank must have a contractual *agreement*

that is *enforceable* under applicable nonbankruptcy law.  Swedbank implicitly concedes this

point when it contends that Congress has "demonstrate[d] its clear intent that bankruptcy impose

no limits on [such] contractual rights."  (Swedbank Brief at 14.)  As discussed in Part II below,

the Committee disputes this contention.  But even if, as Swedbank contends, bankruptcy law

imposes no limits on the contractual rights that may be exercised under sections 560 and 561,

then any such limits must exist under applicable nonbankruptcy law.  Otherwise no law,

bankruptcy or nonbankruptcy, could impose any restrictions on such contractual rights – an

obviously untenable, indeed absurd, proposition.

      Swedbank acknowledges that the Swedbank Setoff is governed by either New

York or English law, which Swedbank characterizes as being substantially similar with respect to

setoff.  (See Swedbank Brief at 11-12 & n.3.)  New York and English law are indeed

substantially similar on this point – unfortunately for Swedbank, because the Swedbank Setoff is

unenforceable under both New York law and English law.  As the party asserting the right of

setoff, Swedbank bears the burden of establishing the existence of that right.  See, e.g., Shugrue

v. Fischer (In re Ionosphere Clubs, Inc.), 164 B.R. 839, 841 (Bankr. S.D.N.Y. 1994) ("A creditor

bears the burden of proving that it has the right of set off in bankruptcy . . . ."); Geron v.

Schulman (In re Manshul Constr. Corp.), No. 99 CIV. 2825, 2000 WL 1228866, at *51

(S.D.N.Y. Aug. 30, 2000) ("A creditor bears the burden of proving its right of setoff . . . .").

Swedbank never did so before the Bankruptcy Court, and cannot do so before this Court, because

under the undisputed facts, as a matter of law, the Swedbank setoff is unenforceable under both

New York law and English law.  For that reason, even if the terms of the Setoff Provision

purport to allow the Swedbank Setoff, Swedbank has no "contractual right" under section 560 or

561 to effect that setoff.

> ### 2. The Swedbank Setoff Is Unenforceable Under New York Law
>
> #### a. New York Law Permits Obligations To Be Set Off Only if They Are Mutual, Meaning That They Are Between the Same Parties Acting in the Same Capacity

New York courts have long held that obligations may be set off only if they are

"mutual."  See, e.g., Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 149 (2d Cir. 2002)

(under New York law, "[i]n setoff, the debts may arise from different transactions, but they must

be mutual" (citations omitted)); In re N.Y. Title & Mortgage Co., 23 N.Y.S.2d 303, 305 (App.

Div. 1940) ("Offset is permissible where mutual debts and credits exist."); Beecher v. Peter A.

Vogt Mfg. Co., 227 N.Y. 468, 473, 125 N.E. 831, 833 (N.Y. 1920) ("Debts, to be applied against

each other, must be mutual."), quoted and followed in Pink v. Hartford Accident & Indem. Co.

(In re Consol. Indem. & Ins. Co.), 287 N.Y. 34, 38, 38 N.E.2d 119, 120 (1941).[3]  The mutuality

requirement applies to setoffs under section 151 of the Debtor and Creditor Law.  Fistere v.

Janapoli, 272 N.Y.S. 332, 333 (App. Div. 1934) (per curiam) ("[S]ection 151 of the Debtor and

Creditor Law applies only to a set-off of mutual debts.  It allows a set-off against 'any

indebtedness' to the plaintiff of 'any amount owing' to the defendant.  This has relation, it

appears to us, to mutual debts and not to other causes of action.").

---

[3]     See also In re Diesel Motors Co., 345 N.Y.S.2d 870, 875-76 (Nassau County Ct. 1973) ("Offset is
permissible where mutual debts and credits exist."); Kress v. Cent. Trust Co., 283 N.Y.S. 467, 471 (App.
Div. 1935) ("The principle upon which the New York rule of set-off rests is that in case of mutual debts it
is only the balance which is the real or just sum owing."); Patterson v. Patterson, 59 N.Y. 574, 579, 581
(1875) ("[T]he cases cited dwell upon the necessity there is, that the debts to be set off should be mutual . .
. .  And thus comes in the English rule, adopted and followed in this State, that the debts to be set off must
be mutual."); Gutchess v. Daniels, 49 N.Y. 605, 608 (1872) ("The right of set-off in the case of cross-debts
is given by law for the benefit of parties having mutual dealings . . . ."); Reab v. McAlister, 8 Wend. 109,
122-23 (N.Y. 1831) ("There must be mutual debts. . . .  There must be mutual debts, to be set off . . . .  [T]o

New York courts have also long held that "debts and credits are mutual when they are 'due to and from the same person in the same capacity.'" Kemper Reinsurance Co. v. Cocoran (In re Midland Ins. Co.), 79 N.Y.2d 253, 259, 590 N.E.2d 1186, 1189 (N.Y. 1992) (quoting Beecher, 227 N.Y. at 473, 125 N.E. at 833); see id. at 264 ("Before an offset will be allowed . . . the claims must be mutual, i.e., owed between the same persons and in the same right."); Consol. Indem., 287 N.Y. at 38, 38 N.E.2d at 120 (same) (quoting and following Beecher).[4]  In this regard, "'[c]apacity' means legal capacity (e.g., principal, agent, trustee, beneficiary)." Midland Ins., 79 N.Y.2d at 264, 590 N.E.2d at 1192.

Under this standard, parties may satisfy the mutuality requirement only when they are acting in the same legal capacity with respect to the obligations that are the subject of the

---

be set off, the demand must be mutual. . . .  The respective claims must be mutual debts."); Dale v. Cooke, 4 Johns Ch. 11, 13 (N.Y. Ch. 1819) ("The debts, or the credits . . . must be mutual . . . ."); Duncan v. Lyon, 3 Johns Ch. 351, 358 (N.Y. Ch. 1818) ("There must be mutual debts."); Murray & Murray v. Toland & Meade, 3 Johns. Ch. 569, 574 (N.Y. Ch. 1818) ("The debt demanded, and the debt to set-off, must be mutual . . . .").

[4]     See also Hansen v. Lorenzo, 901 N.Y.S.2d 906 (Table), 2009 WL 3681845, at *2 (Suffolk Dist. Ct. Oct. 30, 2009)  ("To permit a setoff as Defendant requests, the debt and credit must have been mutual inasmuch that they were 'due to and from the same persons in the same capacity.'" (quoting Midland Ins.)); Millennium Envtl., Inc. v. City of Long Beach, 827 N.Y.S.2d 171, 175 (App. Div. 2006) ("[D]ebts and credits are mutual when they are 'due to and from the same person in the same capacity' . . . .  The debts may arise from different transactions, so long as mutuality of identity and capacity exist." (brackets in original) (citations omitted)), appeal dismissed and denied mem., 8 N.Y.2d 915, 12 N.Y.2d 76 (2007); Gen. Elec. Capital Bus. Asset Funding Corp. v. Hakakian, 776 N.Y.S.2d 576, 577 (App. Div. 2004) (quoting and following Beecher), appeal denied, 4 N.Y.3d 703, 824 N.E.2d 50 (2005); Harnett v. Nat'l Motorcycle Plan, Inc., 399 N.Y.S.2d 242, 244 (App. Div. 1977) ("mutuality requires that the debts be due to and from the same persons in the same capacity"); Diesel Motors, 345 N.Y.S.2d at 875 ("Debts and credits to be mutual must be due from the same persons in the same capacity."); Sandler v. United Indus. Bank, 256 N.Y.S.2d 442, 444 (App. Div. 1965) ("[I]n order that one demand may be offset against another, both must mutually exist between the same parties."); In re Perfection Technical Servs. Press, Inc., 256 N.Y.S.2d 166, 169-70 (App. Div. 1965) (citing and quoting decisions), aff'd mem., 18 N.Y.2d 644, 219 N.E.2d 424 (1966); Drake v. Pierce Butler Radiator Corp., 116 N.Y.S.2d 712, 717, 718 (Sup. Ct. 1952) ("due to and from the same persons in the same capacity"); In re Proffen's Estate, 24 N.Y.S.2d 889, 892 (Sur. Ct. 1940) (citing and quoting authorities); N.Y. Title, 23 N.Y.S.2d at 305 ("Debts and credits to be mutual must be due from the same persons. "); Hughes v. Frank M. Murphy, Inc., 6 N.Y.S.2d 833, 835 (App. Term. 1938) (per curiam) ("held in the same right"); Pink v. Title Guar. & Trust Co., 274 N.Y. 167, 176, 8 N.E.2d 321, 325 (1937) ("claims . . . held in the same right"); Dale, 4 Johns. Ch. at 13 ("due to and from the same persons in the same capacity"); Duncan, 3 Johns. Ch. at 359 ("To authorize a setoff, the debts must be between the parties, in their own right . . . ."); Murray & Murray, 3 Johns. Ch. at 574 ("they must be due to and from the same persons, in the same capacity").

proposed setoff.  "They cannot be liabilities held in inconsistent relations."  <u>Diesel Motors</u>, 345

N.Y.S.2d at 875; <u>see</u> <u>N.Y. Title</u>, 23 N.Y.S.2d at 305 (same).  For example, assume that Party 1

has a claim against Party 2, Party 2 has a claim against Party 1, and Party 1 seeks to set off its

claim against Party 2's claim.  If both Party 1 and Party 2 hold their respective claims as

principals, then both Party 1 and Party 2 would be acting in the same capacity with respect to

those claims for purposes of the mutuality requirement.  <u>See</u> <u>Midland Ins.</u>, 79 N.Y.2d at 264, 590

N.E.2d at 1192.  On the other hand, if Party 1 holds its claim as a principal, and Party 2 holds its

claim as a trustee, then under not only the general "legal capacity" standard stated in <u>Midland</u>

<u>Insurance</u>, but also under the specific examples listed in that decision ("principal, agent, trustee,

beneficiary"), Party 1 and Party 2 would *not* be acting in the same capacity with respect to these

claims, with the result that the mutuality requirement would not be satisfied and Party 1 could

not effect the proposed set off.

b.    <u>The Swedbank Setoff Does Not Involve Obligations<br>Between the Same Parties</u>

The requirement that obligations be between the same "persons" means as

between the same two entities and is not satisfied here.  Courts in the Second Circuit have

unequivocally stated that a debtor and a debtor-in-possession are two separate and distinct

entities.  <u>See, e.g.</u>, <u>In re Genuity, Inc.</u>, 323 B.R. 79, 82 (Bankr. S.D.N.Y. 2005) ("[T]he debtor

and debtor-in-possession are two separate and distinct entities."); <u>Burley v. Am. Gas & Oil</u>

<u>Investors (In re Heafitz)</u>, 85 B.R. 274, 278 (Bankr. S.D.N.Y. 1988) ("[A] a pre-petition debtor

and a debtor-in-possession are separate and distinct entities.").  Indeed, the Court of Appeals for

the Second Circuit itself has stated:  "A debtor-in-possession . . . , a trustee under [Chapter 10],

or a trustee in a straight bankruptcy proceeding is *not* the same entity as the pre-bankruptcy

company.  A new entity is created with its own rights and duties, subject to the supervision of the

8

bankruptcy court."  <u>Shopmen's Local Union No. 455 v. Kevin Steel Prods., Inc.</u>, 519 F.2d 698,

704 (2d Cir. 1975) (emphasis in original).[5]

Because (1) the prepetition Debtors and the postpetition Debtors are different

entities, and (2) the Swedbank Setoff involves a Swedbank claim against prepetition LBHI and a

Swedbank debt to postpetition LBHI, the Swedbank Setoff does not meet the "same persons"

requirement for mutuality, and is therefore unenforceable under New York law.

c.    <u>The Swedbank Setoff Does Not Involve Obligations<br>Between Parties Acting in the Same Capacity</u>

The "same capacity" requirement is not met when, although the obligations

involve the same parties, they arose when the parties were acting in different capacities, such as

principal and fiduciary.  For example, in <u>Scherling v. Hellman Elec. Corp. (In re Westchester</u>

<u>Structures, Inc.)</u>, the court, interpreting the "same capacity" requirement under both the

Bankruptcy Code and New York law, stated that, under New York law, "where a party holds

funds in trust, it does not stand in the same capacity as a party who owes it a simple debt."  181

B.R. 730, 741 (Bankr. S.D.N.Y. 1995).  The court held that "a fiduciary duty or a trust

relationship in one of the capacities of a party involved in an attempted setoff will not satisfy the

---

[5]    Swedbank incorrectly contends that the holding in <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513 (1984) rejected the distinction between pre- and post-petition entities when it held—without ruling generally— that, "[f]or our purposes" it was sensible to view the debtor and debtor-in-possession as the same entity in order to allow for the modification of a prepetition collective bargaining agreement (and not with respect to asserting a setoff).  <u>Id.</u> at 528.  Courts in the Second Circuit, however, apply the <u>Bildisco</u> holding to fit the context and facts at issue, notably holding that a debtor and debtor-in-possession are different legal entities for purposes of setoff (<u>see, e.g.</u>, <u>In re Genuity, Inc.</u>, 323 B.R. at 82), allowance of administrative expense claims (<u>see In re R.H. Macy & Co. Inc.</u>, 157 B.R. 548, 552-53 (S.D.N.Y. 1993) (fairness requires that claims incident to operation of business by debtor-in-possession, as separate legal entity carrying on business for the benefit of pre-petition creditors, be paid before claims of creditors for whose benefit continued operation was allowed)), and avoidance actions (<u>see In re WorldCom, Inc.</u>, 401 B.R. 637, 649 (Bankr. S.D.N.Y. 2009) (as "any avoidance action arises upon the creation of the estate with the filing of the petition, it is more appropriate to view a debtor and the estate . . . as different entities")).  Therefore, for purposes of setoff, authority in the Second Circuit prescribes that debtors-in-possession are distinct from their corresponding pre-petition entities.

9

concept of mutuality."  Id. at 741 (quoting Ross-Viking Merch. Corp. v. Am. Cyanamid Co. (In re Ross-Viking Merch. Corp.), 151 B.R. 71, 74 (Bankr. S.D.N.Y. 1993)).

Similarly, in Hansen v. Lorenzo, the court denied a landlord's asserted right to setoff because the landlord's claim was as a creditor, but it held the funds subject to setoff in a fiduciary capacity.  See 2009 WL 3681845, at *2-3.  The landlord sought to keep the plaintiffs' security deposit to offset a claim he held against the plaintiffs as a contract party.  Id., at *2.  The court rejected the landlord's setoff claim based on lack of "same capacity" – "an offset is not permitted where the 'obligations *lack* mutuality . . . [for instance] where one party is a trust beneficiary asserting his or her rights against a trustee, and the other is a creditor exercising his or her contractual rights.'"  Id. (emphasis in original and bracketing in original); see also In re Consol. Indem. & Ins. Co., 287 N.Y. at 38-39, 38 N.E.2d at 121 (holding that two claims lacked mutuality where "[o]ne asserts the right of a *cestui que* trust against a trustee; the other asserts a contractual obligation of a debtor to his creditor.  The claims are not 'due to and from the same persons in the same capacity' . . . "); Pink v. Am. Sur. Co. of N.Y., 283 N.Y. 290, 291, 28 N.E.2d 842, 843 (1940) ("losses incurred by defendant under its surety bond had no connection with the reinsurance contracts and arose subsequent to the appointment of plaintiff as liquidator . . . therefore, there was no mutual debt . . . ").

The Swedbank Setoff involves a claim asserted by Swedbank against LBHI and a debt owed by Swedbank to LBHI.  Swedbank's claim arose prepetition, under prepetition contracts with respect to which both LBHI and Swedbank were acting as principals.  Swedank's debt, however, arose postpetition, when various deposits or wire transfers were credited to an LBHI account at Swedbank.  When Swedbank's debt to LBHI arose, LBHI was, and still is, a

debtor in possession, see 11 U.S.C. §§ 101(13), 1101(1), in a case under Chapter 11 of the Bankruptcy Code.  As a debtor in possession, with specified exceptions that are not relevant here, LBHI "[has] all the rights . . . and powers, and . . . perform[s] all the functions and duties . . . , of a trustee serving in a case under [Chapter 11]."  Id. § 1107(a).

As with a bankruptcy trustee, see, e.g., Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.), 318 B.R. 276, 287 (Bankr. S.D.N.Y. 2004) ("[A] bankruptcy trustee . . . owes fiduciary duties to the estate and its creditors."), LBHI, "as a debtor-in-possession, is a fiduciary for its estate and for its creditors."  In re United Healthcare Sys., Inc., 200 F.3d 170, 177 n.9 (3d Cir. 1999); see In re Nw. Airlines Corp., 349 B.R. 338, 369 (S.D.N.Y. 2006) ("The debtor-in-possession is a fiduciary . . . ."), aff'd, 483 F.3d 160 (2d Cir. 2007); In re Cenargo Intern., PLC, 294 B.R. 571, 599 n.32 (Bankr. S.D.N.Y. 2003) ("There is no question that a debtor in possession is a fiduciary, like a chapter 11 trustee, for the estate, creditors and shareholders.").

LBHI's debt to Swedbank arose when LBHI was acting as a principal.  Swedbank's debt to LBHI arose when LBHI was acting as a debtor in possession – the equivalent of a trustee – and thus acting as a fiduciary.  Under New York law, these debts are not mutual, and may not be set off.  See Midland Ins., 79 N.Y.2d at 264, 590 N.E.2d at 1192 ("If the debts between the parties arise when those parties were acting in different capacities, the debts will not be considered mutual."); see also Howard v. Magazine & Book Co., 131 N.Y.S. 916, 918 (App. Div. 1911) ("The general principle that set-offs are allowed only when debts are mutual and in the same right is further illustrated by the rule forbidding set-offs against executors and administrators, when suing upon matters arising since the death of the testator or intestate of debts owing by such testator or intestate."); Lawrence A. Schei, Note, Bankruptcy:  Mutuality as

a Requirement for Set-Off, 28 Cal. L. Rev. 606, 614 (1940) ("Where money is owed to X, known to be acting in a fiduciary capacity for others, it is a trust fund for those others and may not be applied to X's debt to the debtor-creditor.").

> d.    The Swedbank Setoff Violates the Prohibition Under New York Law on Creditors Setting Off Preinsolvency Obligations Against Postinsolvency Obligations

Like a number of other states, New York prohibits creditors from setting off preinsolvency obligations against postinsolvency obligations.  This prohibition is related to the general mutuality requirement discussed above, but also is a separate, independent basis for disallowing a setoff in insolvency proceedings.  As summarized by one article discussing the application of this prohibition in cases under both bankruptcy and nonbankruptcy law:

> Two principles, at least, militate against the right to set off claims arising after bankruptcy or insolvency, on dealings with the receiver, trustee, etc., against claims existing at that time:  (1) The principle . . . that the right to a set-off must be governed by the state of things existing at the moment of insolvency; and (2) that the debts or credits must be mutual or reciprocal. . . .  It may, accordingly, be stated as a general rule that claims arising in favor or against a receiver, trustee, etc., as such, subsequently to the bankruptcy or insolvency, cannot be set off against claims then existing against or in favor of the insolvent.

Annotation, Set-off as between claims by or against bankrupt or insolvent and claims by or against trustee in bankruptcy, receiver, assignee, or trustee in insolvency, arising from transaction after bankruptcy or insolvency, 71 A.L.R. 804, 806 (1931) (collecting and discussing cases), supplemented by 128 A.L.R. 809 (1940).

In New York Title, 23 N.Y.S.2d 303, the Superintendent of Insurance of the State of New York was acting as receiver of a title company in a liquidation proceeding under the New York Insurance Law.  Before it became the subject of the liquidation proceeding, the title company guaranteed particular mortgage participation certificates.  In the liquidation proceeding, the trustees for holders of these certificates asserted the right to set off their guaranty claim

against "[t]he claim of the Superintendent" – who, as liquidator-successor to the title company, also held such certificates – "asserted in his capacity as statutory receiver of the title company with respect to funds payable and distributable upon the certificates subsequent to the time that the company was placed in liquidation." Id. at 305.  The court denied the setoff of the trustees' preinsolvency claim against the company against their postinsolvency debt to the receiver, stating:  "To allow an offset here would be to grant one group of certificate holders a preference." Id. at 307.

The New York Title court discussed and followed In re Chicago Architectural Iron Works v. McKey, 93 Ill. App. 244 (1900).  In that case, the receiver for a company sought, from a tenant of a building owned by the company, "rent due, which had accrued partly before and partly after the possession of the receiver." Id. at 244.  The tenant "answered that it had a valid set-off by reason of work and materials furnished [to] the [company] before the appointment of the receiver." Id.  The court denied the tenant's asserted setoff of its prereceivership claim against its postreceivership debt for rent accrued after the appointment of the receiver, stating:

> [I]n no event could a claim of the [tenant], which had accrued before the receiver was appointed, be set off as against a claim which had accrued after the receiver was appointed, and was therefore due to the receiver, and had never been due to the insolvent [company].  The claim as here allowed was for rent due to the receiver by reason of his having permitted the [tenant] to occupy the premises which were under his control as receiver.  This claim and the claim of [the tenant] against the [company] can not be treated as such mutual claims, due in the same capacity, as to permit of an application of the doctrine of set-off.  Singerly v. Fox, 75 Pa. St. 112 (1874).

Id. at 246.  The Singerly case, in turn, involved a dispute in which a creditor of a partnership for which a receiver had been appointed purchased goods from the receiver, and sought to assert

against its debt for the purchase price of those goods its claim against the company for prereceivership rent owing by the partnership to the creditor.  The court denied the setoff of the creditor's prereceivership claim against the partnership against the creditor's postreceivership debt to the receiver, stating:

> With reference to the set-off, which [the creditor] desired to set up against the price of the goods which he bought at the receiver's sale, we are equally clear. . . .  Primarily the debts of the firm are to be paid from its assets.  If the firm is solvent then those debts will be fully paid; if not, then pro rata.  Now, if each creditor be allowed to purchase goods at the receiver's sale, and pay for them by a set-off, we can readily see how, at least this part of the proceedings of a court of equity might degenerate from a regular and orderly process to a mere scramble for the debtor's goods.  We can further see, if the partnership prove insolvent, one creditor may get his whole claim, and another nothing.  It is obvious, therefore, that the rule claimed by the [creditor] would be pregnant with disorder, and would introduce uncertainty and irregularity, where the contrary is of supereminent importance.

75 Pa. at 114-15.

Other New York courts have applied the same rationale, and reached the same result, as the New York Title court.  In Meyer v. Schulte, 144 N.Y.S. 1028 (App. Div. 1913), aff'd per curiam, 213 N.Y. 675, 107 N.E. 1081 (1914), in "an action brought by an assignee for the benefit of creditors to recover rent due from the defendants to the [assignee's] assignor at the time of the assignment pursuant to a written lease," "[t]he defendants . . . interposed a counterclaim for damages suffered by reason of their having been evicted after the assignment to the [assignee]."  144 N.Y.S. at 1028.   The court dismissed the counterclaim, thereby disallowing the setoff of the defendants' preassignment debt against their postassignment claim, stating:

> If the claim is one against the [assignee's] assignor, then it cannot be allowed as a counterclaim in this action.  The rent herein sued for was due on [the date] when it was assigned to the [assignee]. The eviction and resulting damage to the defendants had not occurred at that time and did not take place until two months later.

14

> To counterclaim these damages against the rent due on [the date of the assignment to the assignee] would be granting a preference to the defendants over the intervening rights of other creditors, and this the law will not permit.

Id. at 1029.

In <u>Derby v. Brandt</u>, 90 N.Y.S. 980 (App. Div. 1904), in connection with a secured creditor's foreclosure upon particular real estate owned by landlords, a receiver was appointed. The receiver sued the defendant hotel company for the "occupation rental" claim that accrued against the hotel company after the appointment of the receiver. The hotel company contended that it could set off against the receiver's claim the hotel company's claim against the landlords for various damages arising before the appointment of the receiver. The court denied the setoff, holding that "the hotel company, claiming an offset against the landlords, could [not] thus defeat the receiver's application to compel the company to pay him an occupation rental," <u>id.</u> at 981.

In <u>Behr v. Menendez</u>, 28 N.Y.S. 525 (N.Y. City Ct. 1894), receivers for a company brought an action against a purchaser for the purchase price of an item that the purchaser bought on credit from the receivers. The purchaser sought to offset or counterclaim against the amount that it owed to the receivers for the purchase price a prereceivership amount that the company allegedly owed to the defendant "for certain advertising." <u>Id.</u> at 525-26. The court ruled against the defendant, stating: "The defendant is clearly liable. The claim upon which the offset or counterclaim is based is one admitted to have been made with [the company] during its existence and long before its insolvency. This cannot be used against these [receivers] . . . ." <u>Id.</u> at 526.

In <u>Otis v. Shantz</u>, 128 N.Y. 45, 27 N.E. 955 (1891), the plaintiffs were appointed trustees pursuant to a liquidation agreement between a corporation and its creditors. The defendant purchased property from the trustees, for which the defendant gave the trustees a

promissory note.  When the trustees sued the defendant to collect on the promissory note, the

defendant counterclaimed, asserting several claims that arose before the appointment of the

trustees, including a claim that the defendant had been fraudulent induced to become a party to

the liquidation agreement.  See id. at 47-49, 27 N.E. at 955-56.  The court ruled against the

defendant, stating:

> It is very clear that neither of the answers asserting counter-claims
> set up any claim that can be set off against the caused of action in
> the complaint.  The alleged counter-claims are not against the
> plaintiffs.  They are founded upon transactions with the
> corporation, prior to the appointment of the plaintiffs as trustees.
> The plaintiffs' claims have no connection therewith, and arose
> subsequent to the execution of the liquidation agreement . . . .  The
> fact that the defendant was induced to execute the agreement by
> fraud is not answer to his obligation arising on a purchase from the
> trustees, nor does it enable him to set off against the debt a claim
> against the corporation.  This would be giving him an inequitable
> preference.

Id. at 49, 27 N.E. at 956.

These New York decisions are consistent with those of courts in other states.  See

H. & G.L. Coleman v. Winters Nat'l Bank & Trust Co., 192 N.E. 478, 479-80 (Ohio Ct. App.

1934) (depositor could not set off its preinsolvency claim with respect to deposit account with

bank against its debt to bank liquidator's postinsolvency claim for rent); Butler v. Turncliffe, 140

So. 201, 201-02 (Fla. 1932) (depositor could not set off its preinsolvency deposit account claim

against its postinsolvency debt to bank liquidator for rent) ("[T]he rent accrued to the liquidator

for the benefit of all the creditors and could not be applied by [the depositor] to his own claim at

the expense of other creditors of [the bank]."), citing and following Chipley State Bank v.

McNeill, 82 So. 292, 292 (Fla. 1919) ("If a bank becomes insolvent and a receiver is appointed

for its effects, its depositor may set off the amount due on their deposits against any amount they

may owe the bank.  But 'the right of set-off against the receiver of a bank is to be governed by

the state of things existing at the moment of insolvency and not by conditions thereafter created.'' (citations omitted)); <u>Washburn Waterworks Co. v. City of Washburn</u>, 218 N.W. 825, 826 (Wis. 1928) (city could not set off its prereceivership claim against water company against water company receiver's postreceivership claim against city for hydrant rentals) ("To allow claims against the water company to be offset against the claims due the receiver in his official capacity would prevent 'the equal distribution of the assets of the estate, and tend to the prejudice of the claims of other creditors.  Such an offset would give the city an unwarranted preference in the distribution of the assets of the water company which came to the hands of the receiver." (citations omitted)); <u>White v. Wasson</u>, 246 P. 445, 447 (Okla. 1926) (depositor could not set off its prereceivership claim for deposit at bank against bank receiver's claim against depositor for rent due for depositor's postreceivership use of rooms in bank building) ("Moneys received by a receiver of an insolvent banking institution, derived as rent or revenues from the assets of the bank in the hands of the receiver, become the property or assets of the bank, and should be distributed pro rata among all of its creditors.  To apply it otherwise would be clearly giving a preference to one creditor over another . . . ."); <u>Cock v. Cole</u>, 7 N.W. 419, 420-21 (Iowa 1880) (defendant could set off claim for prereceivership services provided to gas company against gas company's claim for prereceivership goods provided to defendant, but not against receiver's claim for goods provided to defendant after receiver took possession).

New York courts have also applied similar reasoning, and reached similar results, in cases involving claims against decedents' estates.  As stated by the court in <u>Patterson</u>:

> [I]t was held here [in this state] that a debt created to executors after the death of their testator was not liable to a set-off of a debt due to the defendant from the testator in his lifetime. . . .  The cases . . . are most of them very positive in declaring the rule to be, that in action by an executor upon a cause of action which has been created since the death of his testator, or which has accrued or has arisen since that death, the defendant may not set off a debt against the testator existing

> in his lifetime.  If the debt has been created since the death of the testator it must have been created to the representative, and there can be no doubt; for in such case there can be no mutuality of indebtedness.

59 N.Y. at 578.  The court noted that one of "[t]he reasons given" for this rule is "[t]hat if the set-off is allowed the principle of *pro rata* distribution . . . would be broken in upon."  Id. at 582 (italics in original).  To the same effect is Fry v. Evans, 8 Wend. 530 (N.Y. 1832), in which the court stated:

> There can be no doubt the *offset* was properly excluded.  The plaintiff in both counts declared for a cause of action which arose *after the death* of the intestate, and in such case it is well settled that the defendant can not setoff a demand against the intestate, on the ground that it would change the course of distribution.

Id. at 531 (italics in original); see Root v. Taylor, 20 Johns. 137, 139 (N.Y. Sup. Ct. 1814) (discussing cases) ("[T]his was not an action for goods that were in the defendant's hands, at the testator's death, in which case he might set off; but for goods he has taken possession of since his death; in which case, to allow the set-off, would be altering the course of distribution."); Dale, 4 Johns. Ch. at 13 ("It is an established rule in the courts of law, that if executors sue for a debt created to them since the testator's death, the defendant cannot set-off a debt due to him from the testator.  This would be altering the course of distribution.  I see no reason why the same rule should not prevail in equity."); see also Jones v. Piening, 55 N.W. 413, 414 (Wis. 1893) ("Undoubtedly the rights of the creditors and debtors of an insolvent assignor, as to set-offs, become fixed immediately upon the completion of the assignment, in analogy to the rule applicable to debtors and creditors in the case of a deceased insolvent.").

The principles discussed in these decisions apply with equal force to the Swedbank Setoff.  Under New York law, Swedbank cannot alter the course of distribution, and obtain preferential payment of its unsecured preinsolvency claim against LBHI, by setting off

that claim against Swedbank's postinsolvency debt to LBHI.  Instead it must pay that debt and, like other unsecured creditors, await its pro rata distribution on its claim.

e.      Section 151 of the Debtor and Creditor Law Does Not
          Authorize the Swedbank Setoff

The statutory right of setoff provided under section 151 of the Debtor and Creditor Law does not enable Swedbank to escape the consequences that would otherwise obtain under New York law, and somehow authorize Swedbank to effect the Swedbank Setoff.   First, as noted above, section 151 "applies only to a set-off of mutual debts," Fistere, 272 N.Y.S. at 333, and as established in Parts I.B(2)(a)-(c), supra, the Swedbank Setoff involves debts that are not mutual under New York law.  Second, the background and purpose of section 151 demonstrate that it does not authorize a setoff like the Swedbank Setoff.

Before section 151 was enacted in 1927,[6] the general rule in New York was that only matured debts – that is, debts that were both currently due and payable – could be set off. See, e.g., Martin v. Kunzmuller, 37 N.Y. 396, 397-98, 404 (1867); Reab, 8 Wend. at 121. Courts, however, developed an equitable "insolvency exception" that applied when one of the parties was the subject of an insolvency proceeding, typically an assignment for the benefit of creditors.  See, e.g., Bradley v. Angel, 3 N.Y. 475, 477-78 (1850); Lindsay v. Jackson. 2 Paige Ch. 581, 582-84 (N.Y. Ch. 1831).  In that situation, a creditor of the insolvent debtor could set off (1) a claim that the creditor had against the debtor that had matured by the date of the commencement of the insolvency proceeding, against (2) a debt that the creditor owed to the debtor, regardless of whether that debt matured before or after the commencement of the insolvency proceeding.  See, e.g., In re Hatch, 155 N.Y. 401, 405-06 (1898); Hughitt v. Hayes, 136 N.Y. 163, 167-68 (1892); Richards v. La Tourette,119 N.Y. 54, 57-60 (1890).  This

---

[6]       1927 N.Y. Laws 1741.

insolvency exception, however, did not apply to a creditor that held a claim against the debtor that was unmatured on the date of the commencement of the insolvency proceeding.  In that situation, the creditor could not set off its debt against its claim, but rather would have to pay the debt according to its terms and receive only its *pro rata* distribution on the claim from the debtor's estate.  See, e.g., Gerseta Corp. v. Equitable Trust Co., 241 N.Y. 418, 422-24 (1926); Hatch, 155 N.Y. at 404-06 (1898) (discussing cases); Fera v. Wickham, 135 N.Y. 223, 225-30 (1892).  New York law was more restrictive in this regard than federal bankruptcy law, which permitted a creditor to set off a claim against, and a debt owed to, a debtor even if both were unmatured on the date of the commencement of the debtor's bankruptcy case.  See Frank v. Mercantile Nat'l Bank, 182 N.Y. 264, 266-69 (1905); Garrard Glenn, The Law Governing Liquidation § 545, at 788 (1935).

Section 151 was enacted to change New York law to permit, in an insolvency proceeding, a creditor to set off against a claim that was unmatured on the date of the commencement of the insolvency proceeding.  This change made New York law on this point consistent with federal bankruptcy law, and indeed was intended to just that.  "Under the [Bankruptcy Act] unmatured claims against the bankrupt are provable against his estate and are subject to the law of equitable set-off.  Formerly a different rule existed in our own State.  When the Legislature enacted section 151 of the Debtor and Creditor Law it adopted the [bankruptcy] rule . . . and abrogated the old rule that debts which had not matured at the date of the adjudication in bankruptcy could not be set off."  Siegel v. State, 28 N.Y.S.2d 958, 961 (App. Div. 1941) (citation omitted).

Section 151 eliminated only the maturity requirement that previously had applied to the creditor's claim.  It did not eliminate the requirement that, for a creditor to have a right of

setoff, both the debt and claim, whether matured or not, had to be in existence on the date of the commencement of the insolvency proceeding.  Indeed, section 151 was intended to conform New York law to federal bankruptcy law, which did not (and still does not) permit such a setoff.

> **3.**      **The Swedbank Setoff Is Unenforceable Under English Law**

English law would similarly preclude Swedbank from setting off the Debtors' prepetition obligations with the Debtors' postpetition funds, were this an English insolvency proceeding rather than a New York one.  <u>First</u>, the English Insolvency Rules 1986 do not permit the set-off of pre- and post-petition[7] obligations.  Insolvency Rule 4.90 (which governs insolvency set-off in liquidation) and Insolvency Rules 2.85 to 2.89 (being rules analogous to those applying a liquidation, which govern insolvency set-off in an administration, the most similar of English insolvency proceedings to a Chapter 11 proceeding).  While certain rights of parties to certain financial collateral arrangements are allowed a "safe harbor" once English insolvency proceedings commence, the relevant English statutory rules in relation to such arrangements do not permit setoff of pre- and post-petition obligations.  Financial Collateral Arrangements (No. 2) Regulations 2003 (hereinafter, "<u>FCA Regulations</u>") ¶ 12.[8]  <u>Second</u>, English common law does not allow pre- and post-petition setoff.  <u>See</u> <i>infra</i> at Part I.B(3)(b).

> a.      <u>The English Insolvency Rules 1986 and FCA Regulations</u>
>              <u>Would Preclude the Swedbank Setoff</u>

Under the English Insolvency Rules and FCA Regulations, plain language dictates that parties such as Swedbank are precluded from claiming setoff of pre- and post-

---

[7]      As used in this filing in an English insolvency proceeding context, the term "petition" refers to the equivalent of this term under the Insolvency Rules 1986.

[8]      The FCA Regulations implemented, in the United Kingdom, the <i>Directive 2002/47/EC of the European Parliament and Council of 6 June 2002 on financial collateral arrangements (the "<u>EU Directive</u>")</i>.  The EU Directive applies across the European Union for implementation by all Member States.

petition obligations.  For example, pursuant to Insolvency Rule 2.85(3), rights to set off pre- and

post-petition obligations are expressly disallowed.  The "mutual dealings" which are to be taken

account of for set-off purposes do not include, *inter alia*, the following under the aforementioned

rule: "(a) any debt arising out of an obligation incurred after the company entered

administration" or "(b) any debt arising out of an obligation incurred at a time when the creditor

had notice that – (i) an application for an administration order was pending; or (ii) any person

had given notice of intention to appoint an administrator."  <u>See also</u> FCA Regulations ¶ 12(1).[9]

The right to set off pre- and post-petition obligations is not permitted under safe harbors enacted

to otherwise allow parties to certain financial collateral arrangements additional freedoms to

determine their own rights by contract.  FCA Regulations ¶ 12(2)(a).[10]  Were this an English law

proceeding, Swedbank would be precluded from claiming set-off of pre- and post-petition

obligations.

Apart from their text, policy rationales supporting the FCA Regulations and the EU

Directive which they implement do not contemplate a safe harbor for setoff of pre- and post-

petition obligations.  The EU Directive, which the FCA Regulations implement, was aimed at

creating a uniform EU legal framework for the (cross-border) use of financial collateral and

therefore abolishing most of the formal requirements traditionally imposed on collateral

---

[9]      FCA Regulations ¶ 12(1) provides:

> "(1) A close-out netting provision shall, subject to paragraph (2), take effect in accordance with its terms notwithstanding that the collateral-provider or collateral-taker under the arrangement is subject to winding-up proceedings or reorganisation measures."

[10]      FCA Regulations ¶ 12(2)(a) provides:

> "Paragraph (1) shall not apply if at the time that a party to a financial collateral arrangement entered into such an arrangement or that the relevant financial obligations came into existence –
>
> > (a) that party was aware or should have been aware that winding up proceedings or re-organisation measures had commenced in relation to the other party;"

arrangements. [11]  The objective of the EU Directive was to achieve a greater integration and cost-efficiency of European financial markets by simplifying the collateral process, improving legal certainty in the use of collateral and reducing risks for market participants.[12]  Allowing setoff of pre- and post-petition claims would not increase certainty or reduce risk in application of pre-existing setoff rights, but would rather expand the pool of creditors seeking to set off amounts (at the existing level of certainty and risk).  In fact, to the contrary, creating a new right of pre- versus post-petition setoff may generate new uncertainties and increased risk.

Having regard to the aforementioned English law statutory rules (and the English common law rules considered below), were this an English insolvency proceeding, Swedbank would be precluded from claiming setoff of pre- and post-petition obligations.

<blockquote>b.   Principles of Fairness at English Common Law Would<br>Similarly Preclude the Swedbank Setoff</blockquote>

At common law, a  principle of fairness further animates the pre- and post-petition dichotomy.  The principle is the idea that the assets of the estate existing at the date of liquidation should be shared among all creditors with valid claims as of that date – often referred to under English law as the "*pari passu*" principle.  A key authority for this principle is that of the House of Lords (now the U.K. Supreme Court) in <u>British Eagle Int'l Airlines Ltd. v. Compagnie Nationale Air France</u>, [1975] 2 All ER 390.  In <u>British Eagle</u>, it was held that the International Air Transport Association (IATA) system entered by contract as a clearing house for debts between airlines was a perfectly legal contract. However, in the particular circumstances of this case, it had the effect of giving a distribution of an insolvent airline's property which ran contrary to the *pari passu* distribution required by UK insolvency legislation.

---

[11]      This is made clear in the preamble to the EU Directive.

[12]      This is made clear in the preamble to the EU Directive.

For this purpose, therefore, it was void against public policy and the courts would apply standard UK insolvency law.

This fundamental divide at the petition date, arising as it does from inherent differences in the relative positions of pre- and post-petition creditors, counsels that (under an application of the relevant English law rules) the separation of claims of prepetition and postpetition creditors should be maintained.  This axiom necessarily leads to the conclusion that, as a matter of English law, rights of setoff do not allow for the offset of claims that arose prepetition against obligations arising postpetition.  Indeed, such a provision in a contract would, with reference to <u>British Eagle</u>, <u>id.</u> at 411, be unenforceable as a matter of public policy.  Here, as a matter of English statutory and common law, were this an English insolvency proceeding, Swedbank would not have the right to set off pre- and post-petition debts under its Master Agreements with the Debtors.

In addition, in specifically disallowing setoff of pre- and post-petition obligations, the FCA Regulations – as the U.K. implementing regulations for the EU Directive – are reflective of the position across the European Union.  Such exception to the derivative safe harbors, as may be applied abroad, should be fairly characterized as upholding iterations of the *pari passu* principle.  Further, the U.K. experience under the FCA Regulations, critically, the thriving U.K. derivatives markets (as evidenced in part by the instant Master Agreements), serve to emphasize that U.S. and other foreign entities continue to enter into such contracts with U.K. derivative counterparties despite having no right to set off pre- and post-petition obligations.  Accordingly, no such right is needed to ensure the functioning of derivative financial markets; and indeed, contrary to any party being deprived of its contractual expectations, a ruling that upholds the principles of underlying English and New York law will maintain the delicate

balance that has allowed the broad, transnational derivative markets to operate efficiently.  That very efficiency itself calls into question Swedbank's assertion that one would increase risk and uncertainty by upholding the longstanding principle disallowing setoff of pre- and post-petition obligations.

## II.  SECTIONS 560 AND 561 DO NOT OVERRIDE SECTION 553

In arguing that sections 560 and 561 abrogate the entirety of section 553, Swedbank contends that this Court should disregard longstanding congressional policy under section 553.  (Swedbank Brief at 25 ("Section 553 does not control the determination of Swedbank's Safe Harbor contractual rights because it is a 'a [sic] provision of this title [title 11]' whose applicability is rendered inoperable by Sections 560 and 561").)  Swedbank's interpretation of sections 560 and 561 is incorrect for several reasons, one is that it would permit contravention of longstanding congressional policy against permitting parties in bankruptcy cases to purchase claims to setoff against their debts to debtors.

Section 553(a)(2)(A) of the Bankruptcy Code explicitly proscribes setoff of claims where a claim was acquired from an entity other than the debtor, after the commencement of  bankruptcy proceedings.  11 U.S.C. § 553(a)(2)(A).  By prohibiting parties from setting off against claims that they purchased postpetition, Congress effectively blocked parties from purchasing discounted claims for the purpose of setting them off against their own debts to the debtor, thereby effectively receiving payment in full on account of such setoffs rather than their *pro rata* shares of the estate.  5 Collier on Bankruptcy ¶553.03[5][a][i] (2010).

Section 553(a)(2)(A) has no exception for derivatives counterparties.  But Swedbank's reading of the interplay between sections 560 and 561, on the one hand, and section 553, on the other hand, would have the effect of creating such an exception because it would allow derivatives counterparties to purchase claims, postpetition, to set off against such

counterparties' debt to debtors.  Such claims trading would contravene the clear statutory language and congressional intent of section 553(a)(2)(A).  See Cont'l & Commercial Trust & Sav. Bank v. Chi. Title & Trust Co., 229 U.S. 435, 444 (1913) ("It is the main purpose of [section 68b of the Bankruptcy Act (precursor to Bankruptcy Code section 553(a)(2))], as its terms show, to prevent debtors of the bankrupt from acquiring claims against the bankrupt for use by way of set-off and reduction of their indebtedness to the estate.").[13]  In addition, such claims trading would contravene the clear intent of section 553(a)(2)(A) to not permit such claims trading by derivatives counterparties.  This egregious result, which is inconsistent with the plain language of section 553(a)(2)(A) and longstanding Congressional policy, illustrates the invalidity of Swedbank's statutory argument.

---

[13]    Moreover, sections 560 and 561, by their plain terms, are only intended to allow offsets of "amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements."  11 U.S.C. § 560.  To afford their terms special power to allow derivative counterparties to purchase postpetition claims for the purpose of asserting a setoff would be to expand their meaning beyond that indicated in the text.

## CONCLUSION

For the foregoing reasons, in conjunction with the reasons outlined in the

Debtors' Brief, the Committee respectfully requests that the Bankruptcy Court's Order be

affirmed, and all such further relief be granted as the Court deems just and equitable.

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Wilbur F. Foster, Jr.
　　Dennis F. Dunne
　　Wilbur F. Foster, Jr.
　　Evan R. Fleck
　　Dennis C. O'Donnell
　　1 Chase Manhattan Plaza
　　New York, New York 10005
　　Telephone: (212) 530-5000

　　David S. Cohen
　　Adrian C. Azer
　　1850 K Street, N.W.
　　Washington, D.C. 20006
　　Telephone:  (202) 835-7500

　　Counsel for Official Committee of Unsecured
　　Creditors of Lehman Brothers Holdings Inc., et al.